**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAGNO LEONARDO NAULA SAGBAY,**<br>**Petitioner,**<br>**v.**<br>**J.L. JAMISON, *et al*.,**<br>**Respondents.** | **CIVIL ACTION NO. 26-7265** |

**MEMORANDUM OPINION**

**Rufe, J.** **September 24, 2026**

Petitioner Magno Leonardo Naula Sagbay brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS") as unlawful. Petitioner argues that his detention violates the substantive and procedural portions of the Fifth Amendment Due Process Clause and that his arrest violates 8 U.S.C. § 1226 and its implementing regulations. The government opposes the Petition, but did not respond to all claims raised in the Petition, either in its Response or at the hearing held in front of the Court. Rather, the government "concedes that this matter generally presents factual allegations and questions of law regarding due process that are substantially the same" as those the Court recently considered when granting habeas relief to another detained noncitizen,[1] and confirmed through its attorney at oral argument that it assumes the Court will decide the case as it did previously on those due process issues.[2] For the reasons stated below, the Court will grant the Petition and order Petitioner's immediate release.

[1] *De Los Santos Medina v. Jamison*, No. 26-cv-6800, 2026 WL 2742071 (E.D. Pa. Sep. 16, 2026).

[2] Opp'n at 1 [Doc. No. 3].

## I. BACKGROUND

Petitioner is a national and citizen of Ecuador who entered the United States on an unknown date and has resided in this district since 2021.[3] Petitioner has had no interactions with immigration officials prior to his arrest and has never filed any immigration applications.[4]

On the morning of September 15, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents while in a vehicle on his way to work.[5] The agents were pursuing a different passenger who had entered the vehicle, but had no knowledge of, or information about, Petitioner as they surrounded the vehicle and demanded that the driver shut off the vehicle and open the doors.[6] After "non-compliance" by the driver, the agents "defeated" the passenger side windows of the vehicle by breaking them and forcibly removed all passengers, including Petitioner.[7] The agents "pulled [Petitioner] out [of the vehicle] and threw him to the ground injuring his hand, shoulder, and knee."[8] It was only at this point that ICE determined Petitioner's identity and that he was not legally present in the United States. The agents removed Petitioner to a field office and, ultimately, the Philadelphia Federal Detention Center.[9]

Petitioner was not presented with an administrative warrant at the time of his arrest.[10] The government has offered a Form I-200 administrative warrant for the arrest of Petitioner dated

---

[3] Pet. ¶ 19 [Doc. No. 1].

[4] *Id.* ¶ 20.

[5] *Id.*

[6] Ex. G-2, Form I-213.

[7] *Id.*; Pet. ¶ 20 [Doc. No. 1]; Ex. P-1, Photographs of Petitioner's Vehicle After DHS Encounter.

[8] Pet. ¶ 20 [Doc. No. 1].

[9] *Id.* ¶¶ 20-21; Ex. G-2, Form I-213.

[10] Pet. ¶ 20 [Doc. No. 1].

September 15, 2026, but the warrant includes no timestamp or other indication that it was created prior to Petitioner's arrest.[11] The government makes no argument that it was. Rather, the warrant bases the probable cause for Petitioner's removability on biometric identification and statements allegedly made by Petitioner after the fact of his apprehension, none of which existed before Petitioner was forcibly removed from the vehicle.[12] Petitioner's Form I-213 confirms that he was not targeted by DHS until the vehicle he was riding in was pulled over in pursuit of a different target.[13]

Upon his detention at the ICE field office, Petitioner requested review of DHS's custody determination by an immigration judge, and a virtual hearing is now scheduled for October 5, 2026.[14] On September 21, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[15] This Court entered an order directing the government to show cause as to why the Petition should not be granted, setting a hearing for September 23, 2026, and prohibiting Petitioner's transfer from this Court's jurisdiction.[16] Having received the government's response and having heard argument by the parties, the Court now evaluates the Petition.

## II. Legal Standard

Federal district courts are authorized to grant a § 2241 petition where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[17] The

[11] Ex. G-1, Form I-200.

[12] *Id.*

[13] Ex. G-2, Form I-213.

[14] Opp'n Ex. A, Form I-286 [Doc. No. 3-1]; Pet. Ex. 2, ACIS [Doc. No. 1-4].

[15] Pet. [Doc. No. 1].

[16] 9/21/26 Order [Doc. No. 2].

[17] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.[18]

## III. DISCUSSION

Petitioner argues that his detention violates the Due Process Clause because it occurred without a warrant, an individualized evaluation of the need to detain him, or an opportunity to contest the custody decision.

As a preliminary matter, the Court finds that it has jurisdiction to review Petitioner's claims. 8 U.S.C. § 1226(e) does not preclude review of a constitutional challenge to the process afforded before detaining a noncitizen under § 1226(a),[19] nor do any other jurisdiction-stripping provisions of the INA bar review of the Petition.[20]

### A. Exhaustion

Generally, petitioners seeking habeas relief under § 2241 are required to exhaust administrative remedies before the habeas petition can be heard.[21] However, as the statute

---

[18] 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

[19] *Demore*, 538 U.S. at 516-17 (holding that § 1226(e) does not bar review of a constitutional challenge to "the statutory framework that permits . . . detention"); *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (plurality opinion) (holding that a challenge to "the extent of the Government's detention authority" falls outside the scope of § 1226(e)).

[20] 8 U.S.C. § 1252(g), which bars review of "any cause or claim . . . arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," does not preclude judicial review of the instant Petition. Petitioner challenges his detention without a pre-deprivation individualized custody determination or opportunity to be heard, rather than the commencement of removal proceedings.

8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to this case. Section 1252(a)(2)(B)(ii) bars review of only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those officials' discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude judicial consideration of the Petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal.

[21] *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

contains "no [explicit] exhaustion requirement,"[22] exhaustion is a matter of "sound judicial discretion."[23] A § 2241 habeas petitioner need not exhaust administrative remedies if exhaustion would be futile or if the issue presented involves only statutory construction.[24]

The government notes that Petitioner is awaiting a bond hearing in front of an immigration judge.[25] But "[a] later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it,"[26] so Petitioner's exhaustion of that remedy would be futile in remedying his current allegedly unlawful deprivation of liberty. The Court also notes Petitioner is detained at a Bureau of Prisons facility that does not contract with ICE to facilitate remote hearings and that the government does not provide an explanation as to why they are unable to hold an in-person bond hearing. Thus, Petitioner's access to his administrative remedies is limited by the circumstances of his detention.[27] Accordingly, the Court, exercising its

---

[22] *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

[23] *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

[24] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) ("[A] prisoner need not exhaust administrative remedies where the issue presented involves only statutory construction . . . ."); *see also Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) ("Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.").

[25] Opp'n at 2 [Doc. No. 3]; *see also* 8 C.F.R. § 236.1(d) (implementing 8 U.S.C. § 1226 and allowing for post-detention appeals from custody decisions).

[26] *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance.")); *see also Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *2 (E.D. Pa. July 31, 2026) (holding that petitioner detained under § 1226(a) need not exhaust post-deprivation administrative remedies to challenge constitutionality of initial custody determination); *De Los Santos Medina*, 2026 WL 2742071, at *3 (same).

[27] *See Dos Reis*, 2026 WL 1746649, at *3 ("A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust."); *cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'").

discretion, finds that Petitioner is not required to exhaust administrative remedies before the Petition can be heard.

**B. Procedural Due Process Claim**

Petitioner alleges that his arrest without a warrant and without an individualized pre-detention custody determination violate his rights under the Due Process Clause of the Fifth Amendment. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."[28] Furthermore, "[f]reedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[29] It is clear that the Due Process Clause applies to Petitioner's detention, and "the question remains what process is due."[30]

This Court has previously held that, for the arrest of a noncitizen under § 1226(a) to satisfy due process, DHS must make an individualized pre-detention custody determination.[31] Specifically, a lawful detention under § 1226(a) "requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding."[32]

The record does not reflect an individualized assessment prior to Petitioner's detention. The Notice of Custody Determination given to Petitioner states only: "Pursuant to the authority

---

[28] *Zadvydas*, 533 U.S. at 693.

[29] *Id.* at 690.

[30] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[31] *Dos Reis*, 2026 WL 1746649, at *4; *Dzehtisarou*, 2026 WL 2211392, at *4; *De Los Santos Medina*, 2026 WL 2742071 at *4; *Hernandez v. Blanche*, No. 26-cv-6195, 2026 WL 2569475, at *4-5 (E.D. Pa. Aug. 31, 2026); *see also Singh*, 2026 WL 690013, at *6; *Lopez Benitez*, 795 F. Supp. 3d at 493.

[32] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493 (quoting 8 C.F.R. § 1236.1(c)(8))) (internal quotation marks omitted); *Dzehtisarou*, 2026 WL 2211392, at *4; *De Los Santos Medina*, 2026 WL 2742071 at *4.

contained in section 236 of the Immigration and Nationality Act . . . I have determined that, pending a final administrative determination in your case, you will be [d]etained by the Department of Homeland Security."[33] The government does not assert that it considered Petitioner's individual circumstances before detaining him, but states only that § 1226(a) "conditions the Government's discretionary ability to detain only on the noncitizen being charged . . . as removable from the United States."[34] The government is mistaken that removability alone justifies a custody determination. "Relying solely on Petitioner's immigration status amounts to a per se determination that comports not with 1226(a), but with the government's desired policy of detention."[35]

Furthermore, the circumstances of Petitioner's arrest reflect the absence of any prior individualized consideration. Petitioner's detention was not the result of an orderly process by which a warrant for his arrest was considered, issued, and executed. Instead, DHS violently arrested Petitioner without any information about him while in pursuit of a different individual.

To determine whether the procedures used by DHS in detaining Petitioner comport with the requirements of the Due Process Clause, the Court must analyze three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.[36]

---

[33] Opp'n, Ex. A, Form I-286 [Doc. No. 3-1].

[34] Opp'n at 2 [Doc. No. 3].

[35] *Dzehtisarou*, 2026 WL 2211392, at *5 (quoting *Dos Reis*, 2026 WL 1746649, at *4) (internal quotations and brackets removed); *De Los Santos Medina*, 2026 WL 2742071 at *5.

[36] *Mathews v. Eldrige*, 424 U.S. 319, 334 (1976). These factors apply in the context of noncitizens taken into civil immigration custody. *Buele Morocho v. Warden Phila. FDC*, Nos. 16-1150, 26-1454, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021).

The Court will balance these factors as they apply to Petitioner's detention under § 1226(a) without an individualized custody determination.

First, Petitioner has a "constitutionally protected interest in avoiding physical restraint."[37] Indeed, Petitioner's "interest in being free from physical detention" is "the most elemental of liberty interests."[38] Second, the lack of an individualized custody determination creates a substantial risk of erroneous deprivation of Petitioner's liberty.[39] In this case, DHS detained Petitioner pursuant to a general policy goal without any knowledge, let alone an assessment, of the circumstances that would "explain why detention, rather than release on conditions, is necessary for *this* Petitioner."[40] Therefore, the first two factors weigh in Petitioner's favor.

Third, the government does have a legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community."[41] But "those interests can be served through making individualized determinations about noncitizens it seeks to detain."[42] The government made no such determination prior to detaining Petitioner and makes no argument now that Petitioner is a danger to the community or a flight risk. In fact, the government's records show that Petitioner has no criminal history.[43] Thus, the government's

---

[37] *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

[38] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

[39] *See Buele Morocho*, 2026 WL 2546223, at *9 ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)).

[40] *Dos Reis*, 2026 WL 1746649, at *5.

[41] *Zadvydas*, 553 U.S. at 690.

[42] *Hernandez*, 2026 WL 2569475, at *5; *see also Dos Reis*, 2026 WL 1746649, at *5 (holding that the government's legitimate interests in "ensuring appearance at removal proceedings and protecting the community . . . support detention only when the Government connects them to the individual detainee").

[43] Ex. G-2, Form I-213.

interest in Petitioner's detention without an individualized custody determination is weak and is outweighed by Petitioner's liberty interest and the high risk of erroneous deprivation.[44]

The *Mathews* factors, on balance, weigh in favor of finding a due process violation.[45] The further requirement of an individualized pre-deprivation custody determination does not impose an undue burden on the government.[46] Accordingly, Petitioner's due process rights were violated by his detention without a pre-detention individualized custody assessment.[47]

**C. Violation of 8 U.S.C. § 1226(a)**

Petitioner's arrest without an administrative warrant issued at the time is also a violation of § 1226(a), the statute under which the government claims he was detained. Section 1226(a) provides that "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[48] Section 1226(a) "is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General

---

[44] *See Buele Morocho*, 2026 WL 2546223, at *10 ([T]he government's legitimate interest in preventing release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when these non-criminal individuals were detained absent evidence that either is dangerous or a flight risk . . . ." (citation omitted)).

[45] *See id.* at *8-10 (finding due process violations where Petitioners' interest in avoiding physical restraint and the risk of erroneous deprivation from "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or a flight risk" outweighed "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings" (citations omitted)).

[46] *Dos Reis*, 2026 WL 1746649, at *5; *see also C.W.M. v. Hermosillo*, No. 2:25-CV-02688-DGE, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026) ("[A]lthough requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.").

[47] As the Court noted in *De Los Santos Medina*, 2026 WL 2742071, at *7, the Third Circuit's recent holding in *Buele Morocho* that mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) violates due process is consistent with the Court's present holding that detention under § 1226(a) requires an individualized determination of whether Petitioner is a danger to the community or a flight risk. *See Buele Morocho*, 2026 WL 2546223, at *8-10.

[48] 8 U.S.C. § 1226(a) (emphasis added).

discretion to detain or release 'the arrested alien' are likewise not triggered."[49] As noted above, the record shows that the administrative warrant for Petitioner's arrest was not issued until he was already in ICE custody. The warrant has no timestamp.[50] The narrative of Petitioner's arrest shows that he was not a target of, or even known to, the agents who arrested him.[51] Because Petitioner's detention did not occur "[o]n a warrant issued by the Attorney General," it was unlawful under § 1226(a) in addition to violating procedural due process.[52]

### D. Remedy

The proper remedy for Petitioner's unlawful detention is release. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."[53] A determination of removability and potential post-detention bond hearing cannot stand in for the pre-detention individualized assessment that due process requires before the "initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."[54]

## IV. Conclusion

For the reasons stated herein, the Petition for a Writ of Habeas Corpus will be granted, and the Court will order Petitioner's immediate release.[55] An order will be entered.

---

[49] *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023); *see also Chogglo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("[A]bsent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).").

[50] Ex. G-1, Form I-200.

[51] Ex. G-2, Form I-213.

[52] 8 U.S.C. § 1226(a).

[53] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

[54] *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 884 (S.D. Texas 2026).

[55] Petitioner also challenges his detention as a violation of the substantive component of the Fifth Amendment Due Process Clause. Because Petitioner is entitled to habeas relief based on violation of procedural due process and § 1226(a), the Court does not reach that claim.